Lipscojib, J.
This suit was brought by the appellant against the appellees.
The petition and the amendment thereto show that the appellees, as adminis *198 trators, had been ordered by the chief justice of Colorado county to hire out, for one year to the highest bidder, two slaves that belonged to the succession of which they were tlie administrators, after advertising tlie time and terms of the hiring; that tlie appellees did so advertise tlie said slaves for hire, and gave notice that the person so hiring must give a note with good personal security for the payment; that such hiring took place, and the appellant giving the highest bid, the slaves were knocked oil' to him; that he tendered his note with too good securities for its payment, according to the conditions of tlie hiring ; that the appellees refused and failed to give up to him the said two slaves; that in consequence of the failure to get tlie slaves he was greatly injured; that in tlie expectation of having the labor of the slaves for that year he had incurred great expense by enlarging- his plantation and splitting- a great many rails, which was a total loss to him.
There does not appear to have been any evidence of the special loss sustained by the plaintiff, excepting an effort to prove the value of cotton that year, which was ruled out by the court. We do not believe that the court erred in ruling out such evidence, under the allegations of tlie petition. The probable loss of such profits from tlie cotton crops was too remote and depended upon too many contingencies, and was too speculative in its character to have authorized its reception as evidence of any specific and certain loss. The loss should be certain ; such as the value of his preparation for the crop, in the anticipation of the labor of the two slaves, if such had been proven, would have been.
Tlie contract of hiring was, however, fully proven ; and the court charged the jury that, unless some loss was proven, they could not give damages at all. This, we apprehend, was error. Tlie law is, that if the contract is proven to be broken, the law would give some damage, sufficient to authorize a verdict for tlie plaintiff, although, in the absence of proof of special loss, the damages would be nominal only.
The court, too, ruled that consequential damages could not be allowed in this action. In this we believe the court to have erred; but, as there was no evidence offered of such, this error would not authorize a reversal of tlie judgment. We believe that such immediate and specific loss resulting from the breach of the contract, as we have before mentioned, could, if proven, be allowed by the jury in this suit.
[396]
The court also charged tlie jury that the defendants were the judges of tlie solvency of Hope and the securities tendered, and had a right to reject them if they believed they were insolvent. How, there was no fact offered in evidence in support of such a belief as the insolvency of tlie securities tendered; but, on the contrary, all the evidence placed the solvency of the parties to the note beyond question. The charge was therefore not applicable to the evidence, and was calculated to mislead the jury; and the presumption is that, but for this charge, tlie jury would have found tlie breach of tlie contract, and of course some damages. The charge, if any, should have been, that if tlie jury found from tlie evidence that there was a reasonable ground for such an opinion that the security was not sufficient to ensure the payment of the note for hire, then they had a right to reject the security offered. If the security ivas not sufficient, it would not have been difficult to prove it to a reasonable certainty. But the grounds of such belief wore facts that should have gone to tlie jury. Sup-lióse that tlie defendant had said the securities were not sufficient, could they have set the slaves up again for hire at the risk of the plaintiff, who had first bid them off, and if they did not hire for so much, at the second trial, under article 1175, Hartley’s Digest, could they have recovered the difference in tlie bids from I-Iope, and excluded him from the privilege of showing that lie had, upon his bid, tendered sufficient security, and well known to be so? Clearly he would have a right to make such defense.
Tlie authority of the administrators to hire the slaves is found in article 1179, Hartley’s Digest. The judgment is reversed and the cause remanded.
Note 64. — 'Damages are given as a compensation or satisfaction for an injury actually received, ami they should be commensurate with the injury — neither more nor less. General damages {ire such as result necessarily from the injury, and they may be recovered on a general allegation of damages. Special damages are the natural but not the necessary result of the act complained of, and they must be averred and proved. (Moore v. Anderson, 30 T., 224.)